**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ELIZABETH HARDY, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-3869 |
| | § | |
| OPREX SURGERY (BAYTOWN) L.P. | § | |
| d/b/a ALTUS BAYTOWN HOSPITAL; | § | |
| ZT WEALTH, LLC d/b/a ZT CORPORATE, | § | |
| | § | |
|    *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Elizabeth Hardy's motion for reconsideration (Dkt. 55) of this court's order (Dkt. 52) granting in part and denying in part the defendants' motion for summary judgment (Dkt. 36). Defendants Oprex Surgery (Baytown) L.P. d/b/a Altus Baytown Hospital ("Altus Baytown") and ZT Wealth, LLC d/b/a ZT Corporate ("ZT Wealth") have responded (Dkt. 56), Hardy replied (Dkt. 59), and Altus Baytown and ZT Wealth surreplied (Dkt. 61). After reviewing the motion, response, reply,[1] surreply, relevant evidence, and applicable law, the court is of the opinion that Hardy's motion should be DENIED.

**I. BACKGROUND**

On August 14, 2020, this court issued an order granting in part and denying in part the defendants' motion for summary judgment. Dkt. 52. Before the court issued its order, it allowed Hardy to take the deposition of one last witness, Jillian Burba. Dkt. 43. The focus of Burba's deposition was a discussion that she had via phone on May 10, 2018 with Molly McComas and

---

[1] The court construes the defendants' objection to Hardy's amended reply as a motion to strike the reply. *See* Dkt. 61 at 1. This motion is DENIED. The court duly considers both Hardy's amended reply and the defendants' surreply.

others. *See* Dkt. 49-6 at 13. McComas would later claim in an email that Burba said on that call that she thought the timestamp on the CAP report submission email looked altered. Dkt. 49-4 at 2.

After the deposition, Hardy submitted supplemental briefing in which she argued that Burba's deposition testimony showed that Altus Baytown's reasons for terminating Hardy were merely pretext for discrimination and retaliation. Dkt. 49. Because the court did not mention this evidence in its summary judgment order, Hardy believes that that court failed to fully consider it. Dkt. 55. Therefore, she asks the court to reconsider its summary judgment order disposing of her Americans with Disabilities Act (ADA) discrimination, Texas Health and Safety Code section 161.134 retaliation, and Family and Medical Leave Act (FMLA) retaliation claims. *Id.* She also asks the court to reconsider that portion of its order finding that ZT Wealth is not a proper defendant to this suit despite that issue having no relation to Burba's deposition. *Id.*

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not formally provide for a motion for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Nonetheless, a district court may reconsider its prior orders under Rules 60(b), 59(e), and 54(b). Rule 59(e) governs a motion to amend a final judgment when the motion is filed within twenty-eight days of the contested judgment. Fed. R. Civ. P. 59(e). Rule 60(b) similarly allows for relief from a final judgment in certain circumstances but with different time requirements. Fed. R. Civ. P. 60(b). Rule 54(b), however, governs motions to reconsider orders that do not dispose of every claim or adjudicate the rights of all parties to a case. Fed. R. Civ. P. 54(b); *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017); *see also Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474–75 (M.D. La. 2002). Here, the court considers Hardy's motion under Rule 54(b), not Rule 59(e), because the court's summary judgment order preserves one of her claims.

An order governed by Rule 54(b) "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). In considering a Rule 54(b) motion, courts may look to Rule 59(e). Fed. R. Civ. P. 59(e); *see also Livingston Downs Racing Ass'n*, 259 F. Supp. 2d at 475–76. But the standard for a Rule 54(b) motion is "typically held to be less exacting" than the standard for Rule 59(e) motions, and the court has broad discretion to revise orders under Rule 54(b). *Id.* at 475. Thus, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (per curiam)).

### III. ANALYSIS

Hardy makes two basic assertions in her motion for reconsideration. First, she argues that the court should reconsider its disposition of her ADA discrimination, Texas Health and Safety Code section 161.134 retaliation, and FMLA retaliation claims because it did not fully consider the deposition of Jillian Burba. Dkt. 55. If it had, Hardy maintains, then it would have concluded that the reasons Altus Baytown provided for terminating Hardy were pretextual. *Id.* Second, Hardy urges the court to reconsider its conclusion that ZT Wealth is not a proper defendant in this suit. *Id.*

A. *Burba's Deposition Testimony*

Hardy claims that the court should reconsider its order on summary judgment because "the Court did not give full consideration to the additional evidence provided in Plaintiff's Supplemental Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. 49),

nor did it discuss or acknowledge the existence of said evidence within the analysis of its final order." *Id.* at 3. Her supplemental response "apprise[d] the Court of newly acquired evidence following the July 20, 2020 deposition testimony of Jillian Burba . . . ." Dkt. 49 at 1. To assuage any concerns that it did not consider this evidence in its memorandum opinion and order, the court now explains how this evidence does not create a genuine issue of any material fact with regard to the claims the court disposed of in its order.

Hardy's primary contention in her motion for reconsideration is that Altus Baytown did not believe, in good faith, the veracity of the reasons it proffered for terminating Hardy. Dkt. 55 at 3, 11, 15. Therefore, she claims, the proffered reasons were simply pretext for discriminatory or retaliatory actions. Unfortunately, Burba's deposition does not provide sufficient evidence for a jury to determine that Altus Baytown's reasons were pretextual.

    *i. ADA Discrimination*

In discrimination cases, "the [pretext] inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993). The only additional evidence that Hardy adduced in her supplemental response is the deposition of Jillian Burba. Although Hardy attempts to paint Burba's testimony as proof of McComas's dishonesty, the court cannot follow her there. For instance, when asked if she recalls telling McComas that she thought the date on the email had been modified, Burba said that she "do[es] not recall making [that] statement." Dkt. 49-6 at 14. The court does not agree with Hardy that this shows that Burba "confirmed that she did not say any of the alleged statements," or that she "particularly remembers not having made any such statements." Dkt. 49 at 6. Next, when asked more than once whether she remembers saying that "in the following year the DNV or state authorities will see that the

4

CAP report was turned in late and may have questions or concerns," Burba responded that she did not recall "stating that specific language." Dkt. 49-6 at 15, 17. This is hardly even a denial, let alone a forceful refutation of McComas's recollection.

There are two other problems with this evidence. First, as Altus Baytown points out, the phone call in question happened on May 10, 2018, two days *after* Hardy was terminated. For that reason, McComas's characterization of the May 10 call in a June 13 email does not bear on what belief McComas and Altus Baytown had on May 8 when the decision was made to terminate Hardy. Second, Burba's assertion that she does not recall telling McComas that the timestamp looked cut and pasted or that the DNV or state may have questions about the late report does nothing to show that Altus Baytown, through its final decision-makers or through McComas,[2] lacked a good faith belief in its reasons for terminating Hardy—her poor performance, failure to timely submit the CAP report, and suspected mendacity. Finally, whether "the lateness [of the CAP report] is essentially inconsequential to the hospital," as Hardy maintains, does not matter. The court will not use "discrimination laws as vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) (citing *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir. 1991)); *see also Assariathu v. Lone Star Health Mgmt. Assocs., L.P.*, 516 F. App'x 315, 320 (5th Cir. 2013) (unpublished) ("That DRMC and HMA's choices were arguably wrong or poorly executed does not change our analysis 'so long as those decisions are not the result of discrimination.'" (citing *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010))).

---

[2] Hardy argues for the first time in her motion for reconsideration that Altus Baytown is subject to liability under the "cat's paw" theory. Dkt. 55. Under that theory, the "discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003). Because Hardy's evidence is insufficient to show that Altus Baytown's reasons for terminating her were pretextual, and because there is no direct evidence of discriminatory or retaliatory animus, there is no animus to impute to the ultimate decisionmaker. For this reason, Hardy's cat's paw argument fails.

Because Hardy still has not provided sufficient evidence to support her claim that McComas and Altus Baytown lacked a good faith belief in their proffered reasons for terminating her, her claims still fail.

ii. *Texas Health and Safety Code § 161.134*

Under section 161.134 of the Texas Health and Safety Code, there is "a rebuttable presumption that the plaintiff's employment was suspended or terminated . . . for making a report related to a violation if the suspension, termination, discipline, or discrimination occur[ed] before the 60th day after the date on which the plaintiff made a report in good faith." Tex. Health & Safety Code § 161.134(f). The court disposed of Hardy's section 161.134 claim, finding that the defendants' proffered reasons for terminating Hardy were sufficient to overcome the presumption that she was terminated for reporting a potential HIPAA violation. Hardy maintains that Altus Baytown's reasons were "nothing more than pretext." Dkt. 55 at 14. In her motion for reconsideration, she offers Burba's deposition testimony as additional evidence of pretext. As explained above, however, Burba's deposition suggests that McComas might have been wrong in thinking that Hardy fabricated the timestamp on the email, but it does not suggest that she was deceitful or lacked a good faith belief in the reasons proffered for terminating Hardy. For this reason, her section 161.134 claim still fails.

iii. *FMLA Retaliation*

The court granted summary judgment in favor of the defendants with respect to Hardy's FMLA retaliation claim, declaring that "Altus Baytown's stated reason for terminating Hardy is legitimate and Hardy's pretext evidence is insufficient." Dkt. 52 at 14. In the context of the FMLA, "[t]o establish that the proffered nondiscriminatory reason is mere pretext, [a plaintiff] must show that [the defendants'] explanation is false or 'unworthy of credence.'" *DeVoss v. Sw.*

6

*Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–49, 120 S. Ct. 2097 (2000)). For the same reasons explained in the ADA Discrimination section above, Burba's deposition is insufficient to create a genuine issue of material fact regarding pretext. Although McComas may have been wrong about Hardy fabricating the date on the CAP submission, "what matters is not whether [McComas] was objectively correct . . . , but whether [she] had a good-faith belief [in her reasons for termination], and that such belief was the basis for the termination." *Id.* at 492 (citing *Waggoner*, 987 F.2d at 1165–66). And as explained above, declining performance and the failure to timely submit the CAP report—regardless of whether she later lied about the date—were also proffered as reasons for Hardy's termination. Hardy has not provided evidence that these reasons were pretextual.

### B. ZT Wealth's Liability

Although Hardy claims that the reason for the court to reconsider its summary judgment ruling is that it failed to give full consideration to Burba's deposition, she nonetheless also asks the court to reconsider its finding that ZT Wealth is not a proper defendant to this lawsuit. Dkt. 55 at 17. She does not explain, however, how Burba's deposition testimony is relevant to this issue. Although the court is inclined to ignore this argument for that reason, it instead addresses it below.

#### i. Alter Ego Liability

The court concluded in its order that ZT Wealth could not be held liable under an alter ego theory because Hardy "produce[d] no evidence that ZT Wealth was involved in Altus Baytown's 'daily employment decisions' let alone the decision to terminate her." Dkt. 52 at 8. In her motion for reconsideration, Hardy cites four pieces of evidence to refute this. First, she claims that Hardy's "offer letter mentioned that she was to consider ZT Wealth her employer." Dkt. 55 at 19.

7

But the precise language in the offer letter does not say "ZT Wealth," but rather "ZT Employment Services." *Id.*; *see also* Dkt. 55-14 at 30. Second, Hardy asserts that the background-check authorization form she signed gave consent to "her employer listed as Altus HMS and ZT Wealth" to conduct a background check. Dkt. 55 at 19. But nowhere in the document does it say that those two entities are her employer. Instead, it simply authorizes them "to obtain a consumer report and/or Investigative consumer report . . . as part of the hiring process." Dkt. 55-14 at 35. Third, Hardy cites the deposition of HR Director Tadessa Williams, who "was ultimately responsible for terminating" her, claiming that Williams "considered her employer to be ZT Corporate rather than Altus-Baytown." Dkt. 55 at 19. In reality, in her deposition, Williams confirms that her employer is "ZT Employment Services." Dkt. 55-4 at 7. Fourth, Hardy points to the deposition of Mr. Liu, the IT manager who investigated the CAP email, arguing that he "also confirmed in his deposition that he was employed and compensated by ZT Corporate." Dkt. 55 at 19. In his deposition, however, Mr. Liu twice confirms that he works for "ZT Employment Services," once in response to the question "You're employed by ZT Wealth?" Dkt. 55-7 at 2. Finally, Hardy concludes by asserting that this is "clear proof that not only did ZT Corporate have the authority to make daily employment decisions for Altus-Baytown Hospital but that they regularly did." Dkt. 55 at 19.

Even assuming, though this point is contested by the defendants, that ZT Wealth is a parent company to Altus Baytown, Hardy still presents no evidence showing a "nexus to [Altus Baytown's] daily employment decisions. *See Lusk v. FoxMeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997). While Hardy has provided some evidence that she and those involved in her termination were employed by ZT Employment Services, she does not provide any evidence showing that ZT Employment Services is the same entity as ZT Wealth. And the defendants assert that ZT Employment Services is a "wholly separate entity that is not a named defendant in this

8

case." Dkt. 56 at 4. The parties both discuss the addresses of the different entities and attempt to show how they either prove or disprove that ZT Wealth is the alter ego of Altus Baytown, but "[c]ommon headquarters and telephone number are not, however, the type of evidence from which a reasonable jury could infer" that ZT Wealth was the "final decision-maker in its subsidiary's employment decisions." *See Lusk*, 129 F.3d at 777. By contrast, the court in *Lusk* explained that the Fifth Circuit found a genuine fact issue regarding centralized employment decisions in another case because there was evidence consisting of "over a hundred documents, signed by the parent's managers, authorizing lay-offs, recalls, promotions, and transfers of the subsidiary's employees." *Id.* at 781. As the court said in *Lusk*, "no such evidence exists here." *Id.*

### ii. ADA and FMLA Liability

Next, Hardy contests the court's decision that ZT Wealth cannot be held liable under the ADA or FMLA, but she does not contest the court's decision regarding liability under section 161.134(a) of the Texas Health and Safety Code. Dkt. 55 at 20–21.

The court found that because "ZT Wealth never employed Hardy," it was not a proper defendant. Dkt. 52 at 8. Hardy argues that the court was wrong because, "[a]s mentioned before, . . . ZT Wealth was listed as 'employer of record' on Plaintiff's job offer, ZT Wealth was the entity that compensated Plaintiff, ZT Wealth trained Plaintiff on multiple occasions during her tenure, and ZT Wealth was the entity that terminated Plaintiff." Dkt. 55 at 21. The court has already explained that the evidence shows that it was the name "ZT Employment Services,"—not ZT Wealth—that appeared on the job offer and the pay checks. Additionally, it was ZT Employment Services—not ZT Wealth—that employed Williams, the final decision-maker in Hardy's termination. And while Hardy claims that ZT Wealth trained her, she does not point to any part of the record that supports that claim. The court did find a citation for this proposition in Hardy's

response to the defendants' motion for summary judgment—"Exhibit T, T-3"—but nothing in Exhibit T resembles a certification of training. *See* Dkt. 37 at 36; Dkt. 37-20 (no certificates). Nonetheless, even if the training certificates say, as Hardy claims, "Altus ZT Wealth Corporate Compliance Program," that is insufficient evidence to allow a jury to conclude that ZT Wealth was her employer.

Finally, Hardy argues that ZT Wealth is a proper defendant under the FMLA because, based on a test identical to the one from *Lusk* used to determine alter ego liability, ZT Wealth and Altus Baytown are a "single integrated employer." Dkt. 55 at 21. Because the test is the same, the result is the same: ZT Wealth cannot be held liable under the FMLA.

## IV. Conclusion

Hardy's motion for reconsideration is DENIED.

Signed at Houston, Texas on January 8, 2021.

_____
Gray H. Miller
Senior United States District Judge